# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WINECUP GAMBLE, INC., a Nevada corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>GORDON RANCH, LP, a Texas limited partnership,<br><br>        Defendant. | Case No. 3:17-CV-00163-RCJ-WCG<br><br>**ORDER** |

Defendant moves for attorney fees after this Court has granted judgment in its favor. The contract provides that the prevailing party in litigation to enforce the provisions of the contract shall be entitled to reasonable attorney fees. The Court therefore grants the motion in part.

## FACTUAL BACKGROUND

In October 2016, the parties entered into a detailed seventeen-page agreement, where Plaintiff was to sell a ranch property in Northern Nevada to Defendant. (ECF No. 34 Ex. A.) As part of the agreement, Defendant deposited a million dollars of earnest money in escrow. (*Id.*) The parties subsequently signed a three-page amendment to the agreement that changed the closing date and increased the earnest money to five million dollars. (ECF No. 34 Ex. B.)

The original terms of the agreement contained a comprehensive risk-of-loss provision. Under the provision, Plaintiff bore the risk of loss until closing, where, in the case of casualty loss before closing, Defendant had the option to take the property as-is with insurance proceeds or to reject the property and take back its earnest money. (ECF No. 34 Ex. A at ¶ 14.) However, without reference to that section, the amendment contained the clause: "Notwithstanding anything to the contrary in the Agreement, the Earnest Money, as increased by the Additional Earnest Money, shall be nonrefundable under all circumstances other than a default by Seller." (ECF No. 34 Ex. B at ¶ 2.)

In February 2017, after executing the amendment and before the closing date, substantial flooding damaged the property. (ECF No. 34 Ex. C at ¶ 6.) Plaintiff declined to repair the property. Defendant rejected the property and demanded a return of its earnest money arguing (1) that the amendment did not change the original contract provision that placed the risk of loss on Plaintiff's shoulders and (2) that Plaintiff's interpretation of the contract provision is not a liquidated damages clause but an unenforceable penalty clause as five million dollars was not an accurate prediction of Plaintiff's damages. (ECF No. 36 Ex. 3.) Plaintiff relied on the amendment to say that the earnest money was not refundable for casualty losses. (ECF No. 44.)

The Court ruled in favor of Defendant as a matter of law finding that the contract was unambiguous in its favor. (ECF No. 55.) However, Plaintiff appealed, and the Ninth Circuit reversed and remanded holding that the intent of the parties was not clear as to whether they meant for the amendment to trump the original agreement's risk of loss language. (ECF No. 80.) As part of its holding, the Ninth Circuit noted that that the Court may consider parol evidence to resolve ambiguities in contractual language under Nevada law. (*Id.* at 4 (citing *Ringle v. Bruton*, 86 P.3d 1032, 1037).) Additionally, the Ninth Circuit did not rule on whether Plaintiff's interpretation of the contract constituted a penalty clause. (*Id.*)

After remand, the parties reinitiated discovery. (ECF No. 88.) During this period, Defendant claims to have discovered that Plaintiff's agent, Mr. Clay Worden, and its owner, Mr. Paul Fireman, deleted ESI pertinent to the factual issues of this case. (ECF No. 108.) Plaintiff asserts that Mr. Worden is merely a consultant accountant who was employed at a separate firm. (ECF No. 112.) However, Mr. Worden performed most of the negotiations for Plaintiff in reaching the agreement and amendment generating numerous emails and text messages with Mr. Fireman and others that allegedly no longer exist as well as other lost ESI. (*Id.*)

Plaintiff conducted a deposition of Mr. Worden subpoenaing all of his documents (including ESI) regarding discussions of the sale of ranch and amendments, the damage to the property, the repairs of the property, breakage of dams, and insurance information. (ECF No. 107 Ex. C.) However, Mr. Worden did not produce any ESI from his devices and admits that the ESI was lost from his electronic devices. (ECF No. 107 Ex. A 43:2–7.) He claimed that Plaintiff orally instructed him to preserve his ESI, (*Id.* at 48:8–13), and that he told his IT department to preserve the relevant ESI (*Id.* at 44:8–14). Nevertheless, Mr. Worden claims that he does not have the emails anymore as a result of a company policy to not preserve emails (*Id.* at 43:14–25), upgrading to a new computer during this time (*Id.* at 44:19–45:1), inappropriate backup settings (*Id.* at 46:19–22), or some combination of these factors.

Additionally, in Mr. Fireman's deposition, he said that he spoke to Mr. Worden about the contract and amendment through personal meetings, telephone calls, text messages, and emails. (ECF No. 107 Ex. B at 23:14–21.) However, they do not currently have these texts messages, and Mr. Fireman admitted that no one had searched his phone to attempt to preserve the text messages. (ECF No. 117 Ex. L at 62:23–63:19.)

Based on this spoliation of evidence, Defendant moved for sanctions against Plaintiff. The Court granted this motion and granted default judgment in favor of Defendant. Defendant is

presently moving for attorney fees to cover the costs that it incurred because of this litigation. It bases this motion on the following provision of the purchase agreement:

> Legal Fees. In the event it becomes necessary for either Seller or Buyer to employ legal counsel, or to bring an action at law or other proceeding, to enforce any of the terms, covenants or conditions of this Agreement, the prevailing party in any such action or proceeding shall be entitled to its costs and expenses incurred, including its reasonable attorneys' fees, from the other party. The prevailing party shall be the party who receives substantially the relief sought, whether by judgment, summary judgment, dismissal, settlement or otherwise.

(ECF No. 34 Ex. A at 14.)

## LEGAL STANDARD

Under Fed. R. Civ. P. 54(d)(2)(B), a party may move for attorney fees after the close of a case. Such a motion must "(i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B). Generally, a party is not entitled to attorney fees unless there is a "statute or contract authorizing such an award." *MRO Communications, Inc. v. American Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999). Where a federal district court is exercising jurisdiction over a state law claim and that state's law awards a party attorney fees, which does not run counter to federal law, the court should follow the state's law. *Id.*

Nevada law provides for reasonable attorney fee awards to prevailing parties in breach of contract claims where the contracts provide for such a right, and in such cases, a court's goal in "interpreting an attorney fees provision, as with all contracts, is to discern the intent of the contracting parties." *Davis v. Beling*, 278 P. 3d 501, 515 (Nev. 2012). "Prevailing party" is a legal term of art, while Nevada has not provided a definition of the term in the context of contract claims, in other cases it has defined it as a party that "succeeds on any significant issue in litigation which

achieves some of the benefit it sought in bringing suit." *Valley Elec. Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) (*Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nevada Nat. Bank*, 623 F. Supp. 469, 470 (D. Nev. 1985)).

"'In determining the amount of fees to award, the [district] court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, so long as the requested amount is reviewed in light of the' *Brunzell* factors." *Logan v. Abe*, 350 P.3d 1139, 1143 (Nev. 2015) (quoting *Haley v. Eighth Judicial Dist. Court*, 273 P.3d 855, 860 (Nev. 2012)). The *Brunzell* factors are

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill;
> (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation;
> (3) the work actually performed by the lawyer: the skill, time and attention given to the work;
> (4) the result: whether the attorney was successful and what benefits were derived.

*Brunzell v. Golden Gate Nat. Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969). Similarly, this District's local rule require that the parties address the following factors:

> (A) The results obtained and the amount involved;
> (B) The time and labor required;
> (C) The novelty and difficulty of the questions involved;
> (D) The skill requisite to perform the legal service properly;
> (E) The preclusion of other employment by the attorney due to acceptance of the case;
> (F) The customary fee;
> (G) Whether the fee is fixed or contingent;
> (H) The time limitations imposed by the client or the circumstances;
> (I) The experience, reputation, and ability of the attorney(s);
> (J) The undesirability of the case, if any;
> (K) The nature and length of the professional relationship with the client;
> (L) Awards in similar cases; and
> (M) Any other information the court may request.

LR 54-14(a)(3).

## ANALYSIS

Defendant seeks an attorney fee award of $923,181.37 representing the entirety of the work that was performed by Defendant's current counsel at McDonald Carano Wilson LLP (McDonald) as well as work done by prior counsel in preparing for and at the beginning of this litigation at Landry & Ludewig, LLP (Landry). This work spanned three year of litigation, totaling 2,104.3 hours at an average hourly rate of $438.71. Defendant has provided itemized billings statements detailing the amount of hours by each attorney that represented Defendant in this proceeding. (ECF No. 148 Exs. K, L.)

Plaintiff first argues that this Court should deny Defendant's motion because the Court has the discretion to do so. Defendant does not provide any outside authority for this determination, rather, the Court finds that declining to award attorney fees in this circumstance would be against the clear language of the contract. Defendant is clearly the prevailing party in this case. Plaintiff next claims argues that Defendant should not be awarded for the time that it spent litigating the prior appeal to the Ninth Circuit that Plaintiff prevailed on. This is incorrect. The prevailing party is not the one that won a particular motion or appeal but the one that won the ultimate case by achieving judgment in its favor. (ECF No. 34 Ex. A at 14.) Plaintiff lastly contends that Defendant is not entitled to attorney fees for work performed by Landry in preparation of the deposition of Ms. Ludewig amounting to $48,364. Ms. Ludewig assisted in the drafting of the contract and advocating for Defendant's position before and shortly into litigation. While Ms. Ludewig did function as a witness in the deposition, that does not entail Defendant did not pay Landry for legal services in the preparation of and counsel during the deposition. As such, the Court denies these arguments and turns to the reasonableness of the award.

///

///

The Court finds that the factors outlined in the local rules cover the *Brunzell* factors and therefore uses those factors for this analysis. Applying these factors, the Court finds that the fee request is largely reasonable:

### I. The results obtained and the amount involved

Defendant's attorneys successfully achieved the return of the five-million-dollar earnest money deposit and now seeks an amount of less than 20% of the amount that they achieved for their client, $923,181.37.

### II. The time and labor required

The main issue in this case was a complex one of contractual interpretation. Prior to litigation, the parties attempted to negotiate this issue outside of court. (*See* ECF No. 148 Ex. L.) Resolving this contractual issue necessitated resort to parole evidence, demanding discovery including seven depositions, two sets of interrogatories, and two sets of requests for production amounting to 2,406 documents. (ECF No. 155 Ex. 1 ¶ 2.) Before the close of discovery, the parties moved for judgment on the pleadings. (ECF Nos. 33, 37.) The Court granted judgment in favor of Defendant, which Plaintiff successfully appealed. (ECF Nos. 55, 80.) Upon remand, the parties continued discovery, where Defendant learned of Plaintiff's spoliation. (ECF No. 107.) This necessitated that Defendant move for sanctions, which this Court granted. (ECF No. 146.)

### III. The novelty and difficulty of the questions involved

The case did present a difficult contract issue on which this Court and the Ninth Circuit disagreed, and the Circuit determined had to be resolved through resort to parol evidence. (ECF No. 63.) Later in the litigation, the parties had to litigate the issue of sanctions based upon spoliation of electronically stored information, which presented further issues.

///

///

### IV. The skill requisite to perform the legal service properly

As this case involved a complex contractual issue in the millions of dollars, the case required counsel to have skill in this area of litigation.

### V. The preclusion of other employment by the attorney due to acceptance of the case

In its brief, Defendant states that it was precluded from doing other work because of its work in this case. (ECF No. 147 Ex. 1.) It is a reasonable inference from the amount of hours that Defendant's counsel spent on this case that it was precluded from other work.

### VI. The customary fee

The Court finds that the hourly rates charged by Defendant's counsel were largely customary. Plaintiff contends that Ms. Lundvall hourly rate which averaged $641 was unreasonable but the Court disagrees. While this rate is higher than average attorneys in Nevada, this rate is reasonable based on the fact that Ms. Lundvall has more than thirty years litigation experience in Nevada. *See Pardee v. AGRW-Canyons LLC*, No. 2:16-cv-01952-JAD-PAL, 2018 WL 10455160, at *4 (D. Nev. Mar. 27, 2018) (finding Ms. Lundvall then-hourly rate of $625 reasonable).

Plaintiff however also argues that Ms. Lundvall performed much of the work in this case that did not require her particular expertise. This included time spent preparing document productions, legal research, shepardizing, and cite checking. *See, e.g.*, ECF No. 148 at p. 46, 106, 149. The Court agrees that this work could have been completed by another attorney with less expertise and charged a lower rate. Plaintiff points to following:

- An entry dated June 30, 2017 for twelve hours billed at $625, which reads, "Research and revise Gordon Ranch Opposition to Motion for Summary Judgment and Motion for Judgment on the Pleadings; several emails with R. Kay re same; Several emails with team re same; Review and analyze motion to file under seal; email with C. Molina re opposition; shepardize and citecheck." (ECF No. 148 at 46 of 242.)

///

- Nine entries from August 7, 2018 to August 15, 2018, totaling sixty-nine hours billed at $650, which contain "Research new issues raised by Winecup in opposition brief and prepare draft reply brief." (ECF No. 148 at 106 of 242.)
- Six entries from September 11, 2019 to September 18, 2019, totaling forty-eight hours of work billed at $650, which read, "Multiple emails with B. Grubb re production of documents/redaction re discovery responses and case management; review and analyze documentation for production." (ECF No. 148 at 149 of 242.)

The Court agrees with Plaintiff that much of this work could have been completed by an attorney with less experience than Ms. Lundvall. As such the Court reduces the fees from these hours by 25%. The bill for these hours total $83,550. The Court therefore reduces this figure by $20,887.50.

### VII. *Whether the fee is fixed or contingent*

The fee arrangement in this case was a standard fixed agreement based upon the hourly rates for time worked.

### VIII. *The time limitations imposed by the client or the circumstances*

There were no demanding time limitations in this case.

### IX. *The experience, reputation, and ability of the attorney(s)*

As this District has recognized before, McDonald is one of the most prestigious firms in this state. *See, e.g.*, *Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd.*, No. 2:12-CV-00054-GMN, 2012 WL 2244262, at *5 (D. Nev. June 15, 2012) ("McDonald Carano Wilson has received national recognition as one of the top law firms in the country.") Defendant's lead counsel, Ms. Patricia Lundvall, has over thirty years of litigation experience and is a partner of McDonald. Defendant's co-counsel Mr. Rory Kay has over tens years of litigation experience and is also a partner of McDonald.

### X. *The undesirability of the case, if any*

The parties do not dispute that there was nothing particularly undesirable regarding this case.

**XI.   *The nature and length of the professional relationship with the client***

The professional relationship with the client and the attorneys only involved the three years of litigation of this case.

**XII.   *Awards in similar cases***

Neither party points to a case that they believe is similar to this one.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Attorney Fees (ECF No. 147) is GRANTED IN PART.

IT IS FURTHER ORDERED that Defendant is awarded $902,293.87 in attorney fees. IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in this according to ECF No. 146 and this Order.

IT IS SO ORDERED.

Dated February 8, 2021.

                                              ROBERT C. JONES
                                            United States District Judge