1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WINECUP GAMBLE, INC.,

                      Plaintiff,

     v.

GORDON RANCH, LP,

                   Defendant.

Case No. 3:17-cv-00163-ART-CSD

ORDER

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      The parties in this consolidated action both lay claim to $5 million in earnest money deposited into escrow by defendant Gordon Ranch, LP ("Gordon Ranch") in 2016 when Gordon Ranch sought to purchase the Winecup Gamble Ranch from plaintiff Winecup Gamble, Inc. ("Winecup"). Prior to the closing date, severe flooding significantly damaged the property which Winecup elected not to restore pursuant to the risk-of-loss provisions in the purchase agreement, and Gordon Ranch in turn elected not to continue with the sale. Winecup now moves for summary judgment. (ECF No. 193.) The parties dispute whether an amendment to the purchase agreement which ostensibly made the earnest money nonrefundable under all circumstances other than a default by Winecup altered the risk-of-loss provisions in the purchase agreement; whether, if so, the receipt of the earnest money by Winecup would be an unenforceable punitive windfall; and whether Winecup defaulted by not restoring the property. Gordon Ranch also moves for judgment on the pleadings on the basis that a standalone cause of action for declaratory relief is unavailable (ECF No. 220) and for sanctions against Winecup for allegedly withholding and spoliating evidence (ECF No. 197.) For the reasons set forth in this order, the Court: (1) denies Gordon Ranch's motion for judgment on the pleadings; (2) denies Gordon Ranch's motion for sanctions; and (3) denies Winecup's motion for summary judgment.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      BACKGROUND

This case has a lengthy litigation history. Gordon Ranch removed this case to this Court on March 16, 2017 (ECF No. 1), and the case was consolidated with Gordon Ranch LP v. Winecup Gamble, Inc., 3:17-cv-00157-RCJ-WGC, on May 23, 2017 (ECF No. 26). The Court summarizes the basic allegations made by the parties and the procedural history of this case, including two orders by the Ninth Circuit Court of Appeals ("Ninth Circuit"), the scope of which are relevant to the instant motions.

### A.      GENERAL ALLEGATIONS

Winecup and Gordon Ranch entered into a Purchase and Sale Agreement with an effective date of October 18, 2016 (the "Purchase Agreement") for sale of approximately 247,500 acres, together with other real and personal property rights, interests, and cattle, in Elko County, Nevada. (ECF No. 1-1 ("Complaint") at ¶¶ 6–7; ECF No. 194-1 ("Purchase Agreement").) The Purchase Agreement required $1 million of earnest money to be deposited by Gordon Ranch into escrow. (Complaint at ¶ 8.) This money was refundable to Gordon Ranch if Gordon Ranch decided to terminate the Purchase Agreement prior to issuing a Notice to Proceed. (*Id.* at ¶ 9.) The closing was to occur between January 2 and January 12, 2017. (*Id.* at ¶ 11.)

Section 14 of the Purchase Agreement set forth the risk-of-loss provisions for the Purchase Agreement. (*Id.* at ¶ 12.) These provisions provided that "if, prior to Close of Escrow, the Property or any portion thereof is materially damaged as the result of fire or other casualty, and Seller [Winecup] elects (which Seller may elect to do in its sole discretion) not to entirely restore the Property, [...] Buyer shall have the option to: (a) Accept title to the Property without any abatement of the Purchase Price[,] in which event [...] all of Seller's insurance proceeds [...] shall be paid over to Buyer; or (b) Terminate this Agreement, in which event all Earnest Money and interest accrued thereon shall be returned to Buyer[.]" (*Id.* at

¶¶ 13–14; Purchase Agreement at ¶ 14.) The Purchase Agreement also contained a provision stating that the earnest money would be refundable "[i]n the event of a failure by Seller to meet a material obligation under this Agreement[.]" (Purchase Agreement at ¶ 8(a).)

In December of 2016, Gordon Ranch informed Winecup that it desired an extension of time for closing. (Complaint at ¶ 15.) The parties executed an Amendment to the Purchase Agreement dated December 21, 2016 (the "Amendment") which extended the time for closing to "on or before April 15, 2017[.]" (*Id.* at ¶ 17; ECF No. 194-2 ("Amendment").) The Amendment required an increase of the earnest money from $1 million to $5 million and modified certain conditions relating to the earnest money. Notably, the Amendment stated that "notwithstanding anything to the contrary in the [Purchase] Agreement, the Earnest Money, as increased by the Additional Earnest Money, shall be nonrefundable under all circumstances other than a default by Seller." (Complaint at § 20; Amendment at ¶ 2.) The Amendment also stated that "[i]n the event of any conflict between the terms and provisions of the [Purchase] Agreement and this First Amendment, the terms and provisions of this First Amendment shall control." (Amendment at ¶ 8.)

In February of 2017, which was after the execution of the Amendment and before the new closing date, severe flooding damaged the property. (Complaint at ¶ 23.) On March 2, 2017, counsel for Gordon Ranch sent Winecup a letter which claimed that the Purchase Agreement required Winecup to deliver the property in the condition it was in when Gordon Ranch entered the Purchase Agreement and that failure to do so would be a breach of the Purchase Agreement. (*Id.* at ¶ 24.) This letter stated that if Winecup did not cure its putative breach within five business days, Gordon Ranch would terminate the Purchase Agreement. (*Id.* at ¶ 27.) Gordon Ranch stated that they would be entitled to a refund of the earnest money under both Section 8(a) of the Purchase Agreement as well as NRS

3

113.040. (ECF No. 194-11 at 2.) Winecup takes the position that Winecup is not in breach for electing not to restore the property since the Purchase Agreement expressly places that decision within the sole discretion of Winecup and that Gordon Ranch, although permitted to elect not to continue with the sale, is not entitled to a refund of the earnest money pursuant to the provision of the Amendment stating that the earnest money is nonrefundable in all circumstances other than default by Winecup. (ECF No. 193 at 16–25.)

## B.   PROCEDURAL HISTORY

Both parties filed actions seeking a declaration that they, respectively, are entitled to the earnest money. Winecup filed its action in the Fourth Judicial District Court of the State of Nevada, which asserted a claim for declaratory judgment under Nevada's enactment of the Uniform Declaratory Judgments Act. (Complaint.) Gordon Ranch filed an action in this Court seeking declaratory judgment.[1] (ECF No. 1 in 3:17-cv-00157-RCJ-WGC.) After Gordon Ranch removed Winecup's action to this Court, the Court consolidated the two actions (ECF No. 26) and the parties agreed to a streamlined briefing schedule without engaging in discovery (ECF No. 24). Winecup then brought a motion for summary judgment which argued that the Purchase Agreement as modified by the Amendment establishes as a matter of law that Winecup is entitled to the earnest money since the Amendment provides that the earnest money is nonrefundable under all circumstances, including flooding, other than default by Winecup, and Winecup did not default. (ECF No. 34.) Gordon Ranch brought a cross-motion for judgment on the pleadings which argued that: (1) the Amendment did not alter the risk-of-loss provision in the original Purchase Agreement; (2) Winecup breached the Purchase Agreement as modified by the Amendment and so lost its entitlement to the earnest money even if the Amendment did alter the risk-of-loss

---

[1] Gordon Ranch's complaint did not specify whether it sought declaratory judgment under the Federal Declaratory Judgment Act or Nevada's Uniform Declaratory Judgments Act

provision; and (3) a reading of the Amendment as altering the risk-of-loss provision would be invalid as a matter of law since the earnest money would operate as a punitive liquidated damages clause. (ECF No. 36.)

On August 30, 2017, the Court issued an order granting Gordon Ranch's motion for judgment on the pleadings. (ECF No. 55.) This order first found that there had been no breach of the Purchase Agreement by Winecup under any of the three theories advanced by Gordon Ranch and that Gordon Ranch did not breach the Purchase Agreement either. (*Id.* at 8–12.) The order then held that it was clear and unambiguous as a matter of law that the Amendment did *not* alter the risk-of-loss provision in the Purchase Agreement, therefore awarding judgment on the pleadings and the earnest money to Gordon Ranch. (*Id.* at 13–16.) The order reasoned that "the specific risk-of-loss provisions of Section 14 must be given precedence over the broad, general terms of the Amendment" and that accordingly, "in executing the amendment, it was not the parties' intent to modify the risk-of-loss provisions[.]" (*Id.* at 14, 15.) Under the unmodified risk-of-loss provisions, the order held, Gordon Ranch is entitled to the earnest money since it had elected not to proceed with the sale following Winecup's election not to restore the property, and this election by Gordon Ranch entitles it to a refund of the earnest money. (*Id.* at 15.)

Winecup appealed this ruling to the Ninth Circuit, which reversed the decision. (ECF No. 80.) Noting in its 5-page memorandum that "[t]he district court based its decision on the fact that the terms of the parties' agreement, as amended, were clear and unambiguous on the critical question of whether the amendment was intended to shift or modify the risk-of-loss scheme[,]" the Ninth Circuit stated that "[a]fter reviewing this agreement and amendment, we disagree with the district court." (*Id.* at 2, 3.) "Reading the parties' agreement as a whole, it is reasonably susceptible to more than one interpretation. The amendment uses broad categorical language that purportedly made the earnest money non-

refundable in almost all circumstances. However, as applied and in context, the terms of the parties' amended agreement are ambiguous on the point of whether the contract was intended to shift the risk-of-loss scheme. The amended agreement is certainly not susceptible only to the interpretation adopted by the district court[.]" (*Id.* at 3.)

Upon remand, the parties conducted discovery. On January 13, 2020, Gordon Ranch filed a motion for sanctions alleging that a third-party consultant for Winecup, Clay Worden, had deleted various emails relating to this case, notwithstanding a litigation hold being in place. (ECF No. 108 at 2.) Gordon Ranch alleged that "[Mr. Worden's] firm's 'policy' was 'not to retain many e-mails' and so Worden testified he received a new computer while the case was pending and that emails saved onto his old computer were irretrievably lost. Even worse, the backup server used by Worden's firm similarly appears to have been wiped of these relevant emails. While Gordon Ranch subpoenaed several other Winecup witnesses hoping to retrieve copies of the emails, those witnesses did not provide any responsive documents. Thus, Gordon Ranch is left without discoverable emails[.]" (*Id.*) Winecup responded that "Contrary to Gordon Ranch's assertion, no evidence is missing in this case. [...] Mr. Worden testified that he received instructions from Winecup to preserve documents, and he instructed his company's IT department to do so. Nevertheless, for unknown reasons (including the possibility that electronic information was deleted before litigation in this case), Mr. Worden's company no longer possesses his electronic information from 2016 and 2017. Importantly, however, all of the relevant information is available from other sources." (ECF No. 112 at 1.)

On July 8, 2020, the Court issued an order granting Gordon Ranch's motion and imposed case-terminating sanctions against Winecup. (ECF No. 146.) Explaining that under Fed. R. Civ. P. 37(e), case-terminating sanctions require a showing that the nonmoving party acted with intent to deprive the moving party

of the information's use in litigation, the order found that Winecup had acted with intent to deprive. The order found that "[w]hile Plaintiff claims that it orally informed Mr. Worden to preserve ESI, this is woefully inadequate as discussed above, but evinces that Plaintiff and Mr. Worden knew they had a duty to preserve the ESI. However, Plaintiff did nothing more than orally inform their chief negotiator and accountant to preserve the ESI, and Mr. Worden allowed his computer to be upgraded without backing up his information and did not suspend his company's aggressive deletion policy and backup settings to accommodate his duty to preserve evidence. These facts are sufficient for the Court to draw an inference that Mr. Worden acted intentionally." (*Id.* at 7.)

Winecup appealed and the Ninth Circuit reversed the imposition of case-terminating sanctions against Winecup. (ECF No. 177.) Holding that "the record, in short, does not support the conclusion that Worden, let alone Winecup, 'acted with the intent to deprive[,]'" the 4-page memorandum explained that "[t]here is no evidence that Clay Worden, Winecup's accountant and chief negotiator, knew that his emails were lost until discovery commenced in 2019. Worden's ESI was managed by the IT department at his independent accounting firm. At Worden's deposition, he explained that although he alerted his IT department of the preservation order in 2017, the instruction was not followed (for unknown reasons), and the documents therefore could not be recovered." (*Id.* at 2–3.) The order also noted that the "remedy should fit the wrong[,]" that "the importance of the purportedly lost ESI is not entirely clear[,]" and that "Winecup has also represented that Worden's accounting work papers are not 'lost' but rather have not been produced because they are irrelevant[.]" (*Id.* at 3.) Finally, the order instructed the Chief Judge of the District of Nevada to assign this case to a different judge for further proceedings. (*Id.*)

Since remand, Winecup filed a motion for summary judgment which argues that the extrinsic evidence obtained during discovery does not create a genuine

dispute of fact as to whether the Amendment was intended to alter the risk-of-loss provision in the Purchase Agreement. (ECF No. 193.) Gordon Ranch filed a renewed motion for sanctions arguing that although the Ninth Circuit's order foreclosed the imposition of case-terminating sanctions, lesser sanctions may be appropriate and Winecup's conduct since the remand merits sanctions. (ECF No. 197.) Gordon Ranch also moved for judgment on the pleadings arguing that Winecup improperly asserts a standalone claim for declaratory relief. (ECF No. 220.) Because the viability the claim for declaratory relief is a threshold issue, the Court addresses it before resolving the renewed motion for sanctions and Winecup's motion for summary judgment.

## II.   MOTION FOR JUDGMENT ON THE PLEADINGS

Gordon Ranch argues that judgment on the pleadings is appropriate because the Declaratory Judgment Act only provides a remedy, not a standalone claim for relief, asserting that "[a]s a result, this Court has said that dismissal is appropriate where a plaintiff alleges a stand-alone claim for declaratory relief and has no other substantive claim." (ECF No. 220 at 2.) Gordon Ranch further argues that any amendment by Winecup to add a claim for breach of contract would be futile since "[a] plaintiff asserting breach of contract must show damages, and Winecup has none tied to Gordon Ranch's acts. After the failed sale, Winecup earned additional income from the livestock, sold the ranch for $6.5 million more than Gordon Ranch contracted to pay[.]" (*Id.*) Winecup responds that Winecup brought this removed action under Nevada's Uniform Declaratory Judgments Act ("Nevada Act"), not the federal Declaratory Judgment Act ("federal Act"), and the Nevada Act expressly allows this type of standalone action. (ECF No. 222 at 1.) The parties dispute whether the Nevada Act or federal Act applies. Winecup also argues that this action would be proper under the federal Act and that amendment would not be futile. (*Id.* at 1–2.)

A Rule 12(c) motion for judgment on the pleadings is "functionally identical"

to a Rule 12(b) motion and "the same standard of review applies to motions brought under either rule[,]" namely that a judgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

Under the doctrine first set forth in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts must follow state substantive law and federal procedural law when adjudicating state law claims. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Courts generally employ the "outcome-determination test" to determine whether a law is substantive or procedural, which asks whether applying federal law instead of state law would "significantly affect" the litigation's outcome. *Id.* However, courts do not undertake this evaluation as "a rote litmus test" and instead undertake the evaluation in light of *Erie*'s dual aims: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996)); *see Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, 572 F. Supp. 3d 977, 987-88 (D. Nev. 2021).

At the outset, it is evident that Winecup originally brought this claim for declaratory judgment in state court under the Nevada Act. (Complaint at ¶ 41.) The Court must therefore determine whether application of the Nevada Act is substantive or procedural for *Erie* purposes where the plaintiff filed a standalone claim in a Nevada court under the Nevada Act and the defendant removed. As Winecup points out, neither the Supreme Court of the United States nor the Ninth Circuit has decided whether the Nevada Act is substantive or procedural. *No. 8 Mine, LLC v. Eljen Grp., LLC*, 2020 WL 6273898, at *16 (D. Nev. Oct. 26, 2020). As the parties' citations indicate, district court rulings on this point have varied. *Compare id.* (applying the federal Act "because it is a procedural statute"), *and*

*Krave Entm't, LLC v. Liberty Mut. Ins. Co.*, 667 F. Supp. 2d 1232, 1237 (D. Nev. 2009), *with Marcus Andrade & NAC Found., LLC v. Dillman*, 2021 WL 4394254, at *2 (D. Nev. Sept. 24, 2021) (noting, in a case with standalone declaratory judgment claims, that "[t]he Nevada Supreme Court has recognized that an early determination of whether liability under a contract exists is an appropriate use of a declaratory suit."), *and Sparks v. HRHH Hotel, LLC*, 2012 WL 1970020, at *2 (D. Nev. May 31, 2012).

Absent controlling law on this point, the Court is guided by the Ninth Circuit which has stated that declaratory judgments are "neither legal nor equitable," *Pac. Indem. Co. v. McDonald*, 107 F.2d 446, 448 (9th Cir. 1939), and the United States Supreme Court which has explained that the distinction depends on whether the right to determination of the issue by jury was traditionally afforded. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959); *see also Sonner*, 971 F.3d at 843 ("[S]tate law cannot circumscribe a federal court's equitable powers even when state law affords the rule of decision."). Here, the Nevada Act is triable by jury, indicating that a declaration under the Nevada Act functions as a legal remedy, therefore application of the Nevada Act does not impermissibly expand the equitable powers of the Court.

The Nevada Act provides rights beyond those of the federal Act, further suggesting that the Nevada Act may be substantive for *Erie* purposes. *See Ernest Bock, LLC v. Steelman*, 2021 WL 1550332, at *3 (D. Nev. Apr. 20, 2021) (noting that the court may have applied the Nevada Act if the plaintiff "point[ed] out a substantive right guaranteed by the Nevada statute that might be missing from the federal one."); *see also Urb. Outfitters, 572 F. Supp. 3d at 988* ("[W]hen state procedural rules are intimately bound up with the state's substantive decision making or serve substantive state policies, federal courts sitting in diversity must give even a procedural state rule full effect.") (internal quotations omitted). Unlike a federal claim for declaratory relief, the Nevada Act expressly allows a standalone

claim for declaratory relief for breach of contract. NRS 30.050 (allowing a contract to be construed either before or after there has been a breach thereof). It is thus clear under the Nevada law that a request for declaratory relief relating to a contract need not be accompanied by a breach of contract claim. *See MB Am., Inc. v. Alaska Pac. Leasing*, 132 Nev. 78, 86, 367 P.3d 1286, 1291 (2016) (describing the requirements for a standalone claim for declaratory relief under the Nevada Act).

Although the Court is not aware of a case from the Supreme Court of the United States or the Ninth Circuit clearly establishing that there is no standalone cause of action under the federal Act, district courts appear to have decided with near uniformity that there is no standalone cause of action under the federal Act. *E.g.*, *Escobar v. TJX Companies, Inc.*, 2022 WL 2704802, at *2 (D. Nev. July 11, 2022) ("[I]t is well-established that the Declaratory Judgment Act does not create a standalone cause of action."); *but see Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) (stating in a case asserting only claims for declaratory judgment that "[w]e know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage."). If this case could not proceed as a standalone claim under the federal Act, as Gordon Ranch argues, then, as Winecup points out, the application of the Nevada versus the federal Act would be outcome determinative, making it substantive under *Erie*. The Court holds that the Nevada Act applies in this case and Winecup's standalone action may proceed.

This holding also comports with the purposes of the *Erie* doctrine to discourage forum-shopping and avoid inequitable administration of law, as well as basic notions of fairness. *See Sonner*, 971 F.3d at 839–40. The Court may consider the litigation history and posture of the instant case to analyze these factors. *See, e.g., Ernest Bock*, 2021 WL 1550332 at *3 (permitting claims for

declaratory relief under both the Nevada Act and the federal Act based on fairness and the parties' actions during the litigation). Here, basic fairness, the interests of justice, and judicial economy support allowing Winecup's Nevada claim for declaratory relief to proceed. Winecup filed this action in a Nevada court under the Nevada Act, which was indisputably proper. Gordon Ranch then removed the action to this Court. Instead of challenging the standalone claim for declaratory relief right away, Gordon Ranch litigated this case for more than five years in this Court before filing the instant motion.[2] Now, having received two Ninth Circuit orders adverse to Gordon Ranch, a reassignment to a different judge, and with the six-year statute of limitations for a contract action near its end, Gordon Ranch seeks dismissal of this case on this issue. As Winecup explains, the practical effect of such a dismissal would be that Winecup would refile in state court. A holding that the Nevada Act is procedural for *Erie* purposes would allow a defendant in a removable case with only a standalone claim under the Nevada Act to remove the case only to have it dismissed, forcing the plaintiff to refile in state court, as Gordon Ranch seeks in the instant case. A defendant in a removable case is given a choice: proceed in state court or remove to federal court. A defendant should not be given the choice to remove to federal court, litigate for some time, then convert the previously proper state declaratory claim into a federal one, argue that the federal declaratory claim fails, and then force the plaintiff to refile in state court. Gordon Ranch's motion for judgment on the pleadings is denied.

### III.   RENEWED MOTION FOR SANCTIONS

Gordon Ranch moves for sanctions against Winecup. (ECF No. 197.) Gordon Ranch's motion renews its arguments for sanctions based on the deletion

---

[2] Notably, the complaint filed by Gordon Ranch in the parallel case that was consolidated with the instant case also asserted only a standalone claim for declaratory judgment, although Gordon Ranch did not specify whether it sought declaratory judgment under the Nevada Act or the federal Act. (ECF No. 1 in 3:17-cv-00157-RCJ-WGC at ¶¶ 43-47.)

of electronically-stored discovery materials by Winecup's third-party consultant Clay Worden, noting that while the Ninth Circuit's order held that there was no evidence that Winecup or Mr. Warden acted with intent to deprive and that case-terminating sanctions are thus improper, lesser sanctions may still be appropriate. Gordon Ranch's motion also argues that sanctions, including potentially case-terminating sanctions, are warranted for Winecup's intentional withholding of evidence following the second remand order. Gordon Ranch contends that "Gordon Ranch is still without the following discoverable evidence: (1) Worden's accounting work papers; (2) text messages between Worden, Fireman, and Rogers related to contractual intent and the post-flooding damage and repairs; (3) documents and communications covering the result of Winecup's insurance claims and insurance proceeds it received; and (4) documents covering Winecup's actual costs of repairs." (*Id.* at 15–16.) Gordon Ranch also notes that the Court ordered Winecup to make supplemental production at a status conference held on November 30, 2021 (ECF No. 196), and that Winecup has not complied with that order. (ECF No. 197 at 13–14.)

Winecup responds, in sum, that it has produced all responsive documents and that no sanctions are warranted. (ECF No. 207.) Specifically, Winecup contends that it has fully produced all of Mr. Warden's "accounting work papers," which it understands to mean Winecup's income statements as well as the information relating Winecup's costs of repairs, and that all of Mr. Warden's deleted emails have been produced from other sources. (*Id.* at 14–15, 18.) Winecup states that it has produced all insurance documents and that there are no responsive text messages. (*Id.* at 13–17.) Winecup also notes that Gordon Ranch did not file a motion to compel before filing the instant motion. (*Id.* at 13.)

Under Fed. R. Civ. P. 37(e), the Court may sanction a party "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take

reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" If the Court finds prejudice to a party from the loss, the Court "may order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). Heightened sanctions, namely a presumption that the missing evidence was unfavorable, an adverse inference jury instruction, and dismissal, are available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation[.] Fed. R. Civ. P. 37(e)(2). The Court uses a preponderance of the evidence standard when evaluation potential sanctions for spoliation. *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) (concluding that a preponderance of the evidence standard is appropriate both under Rule 37(e) and Rule 37(c)[3]). The party arguing that spoliation has occurred has the burden of showing that evidence was in fact destroyed or not preserved. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015).

At the outset, the Court notes that Gordon Ranch has suggested an adverse inference jury instruction as an alternative to case-terminating sanctions. (ECF No 197 at 4.) However, with respect to the deletion of electronic material by Mr. Worden's accounting firm, the Ninth Circuit has already held that there is no evidence of intent to deprive. Intent to deprive is required for issuance of an adverse inference jury instruction, therefore, in light of the Ninth Circuit's order, the Court cannot issue an adverse inference instruction for Mr. Worden's deleted material. The Court will now consider each area of evidence in turn.

### A.    ACCOUNTING WORK PAPERS

Gordon Ranch complains that Winecup has not produced Mr. Warden's "accounting work papers." Although Gordon Ranch does not define this term,

---

[3] Gordon Ranch argues that insofar as Winecup failed to meet the oral orders of the Court at the November 30, 2021 status conference and that Winecup is intentionally withholding evidence, sanctions under Rule 37(b) and (c) are warranted, and Gordon Ranch explains that this means Gordon Ranch was not required to have a meet and confer prior to seeking sanctions. (ECF No. 217 at 11.)

Gordon Ranch states that "the Court instructed Winecup to produce all documents as to 'the fair cost of the ranch repair and the insurance proceeds'" and that "Worden's accounting papers would be key evidence in these categories considering Worden called himself Winecup's 'chief of staff' and McElhinney tabbed Worden along with Rogers as 'the primary points of contact with the insurer's agent.'" (ECF No. 197 at 20–21.) Gordon Ranch further states that "Winecup has produced nothing more than the 17-page financial statement Worden provided at his deposition. This is nowhere near Worden's full accounting work papers as a licensed CPA." (*Id.* at 21 (internal citation omitted).)

To the extent that Mr. Warden's accounting work papers consist of documents relating to insurance and to costs of repair, the Court will discuss those topics below. As for other accounting work papers, Gordon Ranch discusses Mr. Warden's deleted emails, stating that "Worden admitted, and the Court found, that he was Winecup's chief of staff and key witness, he destroyed his emails, he destroyed his laptop, and he allowed his IT department to wipe clean the backup servers housing his ESI. That means Clay Worden destroyed all unique ESI that he possessed." (ECF No. 217 at 20.) Winecup responds that "all of the relevant ESI that may have been deleted from RSM's servers was available elsewhere. The email communications Mr. Worden had relating to the potential sale of the ranch were also possessed by the recipients or senders of those same emails and were replaced from those sources. For example, all of Mr. Worden's emails with Mr. Fireman were preserved in Mr. Fireman's documents, [etc.]" (ECF No. 207 at 7.)

The Court agrees with Winecup. Gordon Ranch has not identified any responsive emails that were not produced, or even any materials hinting at the existence of possible responsive emails that were not produced. Gordon Ranch analogizes the instant case to *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *5–6 (C.D. Cal. Feb. 27, 2020), *report and recommendation*

*adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020), in which the district court granted sanctions for the loss of emails and text messages. That case concerned deleted text messages and emails where some were recovered from third parties. However, in finding that "ESI was lost," the district court noted that the plaintiffs were unable to retrieve some lost content from third parties. *Id.* at *6. This critical finding is absent in this case. Although Gordon Ranch rightly states that its duty is not to point to a specific piece of evidence that was lost, it must at least provide some evidence to meet its burden to show that material was lost by a preponderance of the evidence. Gordon Ranch has not met that burden on this issue.

### B.    TEXT MESSAGES

Gordon Ranch states that Winecup has failed to produce responsive text messages between Mr. Worden, Winecup's owner Paul Fireman, and Mr. Fireman's friend and Winecup's then-manager James Rogers. Winecup responds that "responsive text messages within Winecup's control do not exist (and there is no reason to believe there are responsive text messages from any source)." (ECF No. 207 at 16.) Regarding Mr. Fireman, Winecup states that "his use of text messages as a whole was very limited, and as it related to the subject matter of this case, his communications with Worden were generally on the telephone or in person." (*Id.*) Winecup also stated that Mr. Fireman's personal assistant reviewed his text messages and found there was not anything responsive. (*Id.*) Gordon Ranch responds by quoting an excerpt from Mr. Fireman's deposition in which he states that no one has asked for his phone to determine if he has any text messages related to this case, as well as a passage from the deposition of Winecup's in-house counsel Jack McElhinney stating that he had not personally taken Mr. Fireman's device and searched for responsive text messages. (ECF No. 217 at 14–15.)

Regarding Mr. Worden, Winecup states that Mr. Worden has confirmed in

a sworn declaration that he did not have any text messages on his cell phone that were responsive to the information sought in the subpoena, that he "specifically stated that he did not engage in text messages with Paul Fireman about the negotiations with Gordon Ranch[,]" and that Mr. Worden's text messages were not in the custody or control of Winecup because Mr. Worden used his firm's cell phone. (ECF No. 207 at 16.) Gordon Ranch responds by pointing to several passages in Mr. Warden's deposition and declarations where he describes steps taken to prepare for his deposition and to respond to the subpoena, in which Gordon Ranch states that Mr. Warden "never testified that he searched his phone for text messages." (ECF No. 217 at 16–17.)

Regarding Mr. Rogers, Winecup explains that Mr. Rogers "had no involvement in the negotiations for the attempted sale of the ranch to Gordon Ranch and Winecup had no reason to believe he would possess relevant evidence. Gordon Ranch apparently recognized this as well because it chose not to subpoena documents from Mr. Rogers or take his deposition." (ECF No. 207 at 17.) Winecup also states that Mr. Rogers left Winecup in 2019, before Gordon Ranch served discovery responses, and therefore any text messages that Mr. Rogers may have had on his personal phone were outside Winecup's custody and control. (*Id.*) Gordon Ranch responds that Winecup's duty to preserve arose at least when Winecup filed the instant case in March 2017, when Mr. Rogers was Winecup's ranch manager. (ECF No. 217 at 18.)

The Court finds that sanctions are not warranted for Winecup's conduct relating to production of text messages. Regarding Mr. Fireman, Gordon Ranch states that "[n]o one ever looked at Fireman's phone for text messages." (ECF No. 217 at 16.) However, Gordon Ranch also quotes Mr. McEihenney's deposition testimony describing how Mr. Fireman's personal assistant checked his phone for text messages. There may be an inconsistency between the testimony of Mr. Fireman, who said that no one had ever asked to search his phone, and Mr.

1   McEihenney, who explained that Mr. Fireman's personal assistant had looked
2   through his phone. However, considering that witnesses have imperfect memories
3   and that Mr. Fireman may have understood the question to mean someone other
4   than his personal assistant, this inconsistency hardly rises to the level of a
5   "flagrant" deception, as Gordon Ranch calls it.

6       Gordon Ranch similarly mischaracterizes Mr. Worden's response. Gordon
7   Ranch states that Mr. Worden never testified that he searched his phone for text
8   messages, but in his second declaration, Mr. Worden states, "I had access to my
9   cell phone at the time I received the subpoena in 2019. To my knowledge, at the
10  time I received the subpoena there was no information on my cell phone that was
11  responsive to the information asked for in the subpoena, including text
12  messages." (ECF No. 207–5 at ¶ 7.) While Mr. Worden did not use the word
13  "search," he states that he considered the contents of his cell phone in response
14  to the subpoena.

15      Both the cases of Mr. Fireman and Mr. Worden seem to turn on who,
16  precisely, has the obligation to verify what electronic material is or is not in a
17  party's possession. Gordon Ranch argues that the lawyers (Winecup's or Gordon
18  Ranch's) failed to personally review the contents of Mr. Fireman and Mr. Worden's
19  cell phones. Rule 34 sets forth the procedure for requesting an inspection of
20  electronically stored information, and Rule 37 permits a motion to compel
21  inspection. Gordon Ranch could have requested inspection. Likewise, Gordon
22  Ranch could have submitted a discovery request to Mr. Rogers.

23      **C.    COSTS OF REPAIR**

24      Gordon Ranch argues that Winecup has not produced all material relating
25  to Winecup's costs of repair incurred in the wake of the February 2017 flood.
26  Gordon Ranch argues that Winecup's costs of repair, as well as its receipt of
27  insurance proceeds, are relevant for two reasons: (1) Winecup's actual damages
28  for the flood are relevant to whether the Amendment would be an unenforceable

punitive liquidated damages clause if it awarded the earnest money to Winecup; and (2) Gordon Ranch claims that Winecup "was dishonest with Gordon Ranch during the parties' dealings and the aftermath of the flooding" by obscuring the extent of the flood damage and whether there would be any insurance proceeds to cover the damage, which Gordon Ranch claims impacted its decision to terminate the sale. (ECF No. 197 at 16–17.)

Winecup responds that it has produced all accounting documents relating to repair costs and that nothing relating to repair costs has been lost. Specifically, Winecup states that it has produced: (1) the balance sheet stating the amount of flood damages incurred; (2) the income statements from 2017, 2018, and 2019 which show all the expenses related to flood repair costs, including a ledger identifying each expense and invoice that was related to the flood repair; and (3) all the individual invoices that were coded to flood repair. (ECF No. 207 at 2.) Gordon Ranch's reply does not explain how this production is deficient. (ECF No. 217.) The Court finds that sanctions are not warranted here.

## D. INSURANCE PROCEEDS

Finally, Gordon Ranch argues that Winecup has not produced all of the information relating to the insurance proceeds that Winecup received after the February 2017 flood. Gordon Ranch cites to the deposition testimony of Mr. Fireman where he was asked whether Winecup "[had] property damage coverage that paid for at least some of the property damage" and responded "I'm not sure of that. I think so." (ECF No. 197 at 8; ECF No. 198 Exh. A at 281:21–25.) Gordon Ranch also cites the deposition testimony of Mr. McEihenney who stated that he "believed some coverage was offered" but could not recall which claims were accepted or denied. (ECF No. 197 at 8–9.) Gordon Ranch argues that these statements show that Winecup is either intentionally withholding information about insurance proceeds or the information has been destroyed.

Winecup states that it received no insurance proceeds for the flood.

19

1    Winecup proffers a document from insurer Nationwide which states that "there
2    is no coverage for your loss[,]" and explains that there are no additional policies
3    or documents showing insurance payouts beyond this. (ECF No. 207 at 13–15;
4    ECF No. 207-1.) Winecup explains that while Mr. Fireman and Mr. McEihenney
5    may have imperfectly remembered whether or not there were insurance policies
6    that would cover the flood damage, this does not establish that Winecup is
7    intentionally withholding documents or that any documents were destroyed.
8    Winecup further explains that it has produced not only the policies and claims
9    themselves, but all communications relating to its insurance. Gordon Ranch
10   responds that this document from Nationwide references only a single claim
11   under a single policy and that there must have been more than one policy based
12   on the testimony of Mr. Fireman and Mr. McEihenney. (ECF No. 219 at 8–9.)
13   Winecup

14        The Court finds that sanctions are not warranted. Gordon Ranch proffers
15   only one policy (policy number ending in 9296) relating to property damage, ECF
16   No. 218 Exh. P, and one email alleging that Winecup had made three insurance
17   claims, ECF No. 219 Exh. R. While the document from Nationwide references only
18   one claim (claim number 713068-GE), the document also has a loss date of
19   February 7, 2017, and clearly states that there is no coverage for the loss. Gordon
20   Ranch has neither carried its burden to show by a preponderance of the evidence
21   that Winecup has withheld information, nor shown that any information was lost.
22   The threshold requirement for sanctions that materials have actually been lost
23   or withheld has not been met. Gordon Ranch's motion for sanctions is denied.

24   **IV.    MOTION FOR SUMMARY JUDGMENT**

25        Having concluded that Winecup's declaratory judgment action is proper
26   and that Winecup will not be subject to sanctions, the Court will now consider
27   Winecup's motion for summary judgment. (ECF No. 193.) At the outset, the Court
28   must contend with the effect of the Ninth Circuit order reversing the previous

grant of judgment on the pleadings to Gordon Ranch. (ECF No. 80.) As described above, this order stated that "as applied and in context, the terms of the parties' amended agreement are ambiguous on the point of whether the [Amendment] was intended to shift the risk-of-loss scheme." (*Id.* at 3.)

In the instant motion, Winecup appears to accept that the starting point for analysis is the Ninth Circuit's holding that the Purchase Agreement as modified by the Amendment is ambiguous. (ECF No. 193 at 14–16.) In other words, the Court is bound by the Ninth Circuit's conclusion of law that the contract is ambiguous, and the Court cannot now find that the plain language of the contract entitles Winecup to summary judgment. Winecup argues that summary judgment nonetheless remains available on the basis of the extrinsic evidence, which, it maintains, supports only Winecup's interpretation of the combined agreement. (*Id.*) Winecup cites *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 618 F.3d 1066, 1076–77, 1079 (9th Cir. 2010) and *Caliber One Indemnity Co. v. Wade Cook Financial Corp.*, 491 F.3d 1079, 1085 (9th Cir. 2007), as well as several district court and appellate decisions from other circuits, for the proposition that a district court can grant summary judgment after it has determined that a contract is ambiguous if the extrinsic evidence does not create a dispute of material fact.

The problem with Winecup's argument is that Nevada law prohibits a court from granting summary judgment based on an ambiguous contract. As noted in the Ninth Circuit's memorandum, which itself applied Nevada contract law, the parties do not dispute that Nevada law governs the Purchase Agreement and the Amendment. (ECF No. 80 at 3 n.2.) Nevada law allows extrinsic or "parol" evidence to be used for "ascertaining the true intentions and agreement of the parties when the written instrument is ambiguous." *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 914, 193 P.3d 536, 545 (2008). But the Supreme Court of Nevada has reiterated the principle that "[i]f there is an

ambiguity requiring extrinsic evidence to discern the parties' intent, summary judgment is improper." *Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 310, 301 P.3d 364, 366 (2013) (citing *Dickenson v. State, Dep't of Wildlife*, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994)); *see also Sparks v. HRHH Hotel, LLC*, 2012 WL 1970020, at *3 (D. Nev. May 31, 2012) (citing *Dickenson*). Ninth Circuit cases cited by Winecup that reached a different result did so by virtue of the application of state contract law. *Cachil Dehe Band of Wintun Indians*, 618 F.3d at 1076–77 (applying California law); *Caliber One*, 491 F.3d at 1084 (applying Washington law). Under Nevada contract law, summary judgment is not available if a contract has been deemed ambiguous and extrinsic evidence is being considered. As such, the Court must deny Winecup's motion for summary judgment.

## V.  CONCLUSION

Because the Court's denial of Winecup's summary judgment motion is based on the Nevada contract law which requires a trier of fact to determine the meaning of an ambiguous contract in light of extrinsic evidence, the Court need not presently consider whether Winecup breached the Purchase Agreement nor whether Winecup's reading of the Purchase Agreement as modified by the Amendment would amount to an unenforceable punitive liquidated damages clause under Nevada law.

It is therefore ordered that Gordon Ranch's motion for judgment on the pleadings (ECF No. 220) is denied.

It is further ordered that Gordon Ranch's renewed motion for sanctions (ECF No. 197) is denied.

It is further ordered that Winecup's motion for summary judgment (ECF No. 193) is denied.

///

///

///

1

2     DATED THIS 1st day of March 2023.

3

4

5                                              _____

6                                              ANNE R. TRAUM
                                               UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28